UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Crim. No. 23-10079-FDS |
| v. ) | |
| SAMUEL MONTRONDE, ) | |
| Defendant. ) | |

## TAKEDA PHARMACEUTICALS U.S.A., INC's
## MOTION TO QUASH TRIAL SUBPOENA

Takeda Pharmaceuticals U.S.A., Inc. ("Takeda"), the victim in this case, respectfully asks the Court, pursuant to Fed. R. Crim. P. 17(c)(2), to quash the portions of the subpoena the defendant issued to Takeda on November 4, 2024 (attached as Exhibit 1) ("the Subpoena") that call for the production of the full images of Priya Bhambi's phone and her Takeda laptop computer. The Subpoena on its face is unreasonable and oppressive and calls for Takeda to produce:

a) The entire Cellebrite phone extraction report(s) of Priya Bhambi's phone: Samsung SM-S9014, conducted on or about 11/08/2022;

b) All [phone] file names;

c) Any EY searches of [Ms. Bhambi's] phone;

d) All documents created by [the EY forensic analyst] regarding the search of the phone and any searches of Priya Bhambi's computer(s);

e) The entire image / extraction of Priya Bhambi's laptop (owned by Takeda), conducted on or about 11/08/2022;

f) All [computer] file names;

g) Any searches of the laptop computer;

12419979v4

      h) All documents regarding any search of the laptop.

The Court should quash the Subpoena because (1) Takeda has already produced all of the potentially relevant responsive material relating to Mr. Montronde's involvement with Evoluzione Consulting in its possession, custody and control; and (2) requiring production of the phone and laptop images would be unreasonable and oppressive because it would require Takeda to either (a) expend significant time, effort, and expense to review all data on both devices to ensure production is limited to relevant, non-duplicative, non-confidential, and non-privileged information or (b) produce, without review, devices containing confidential, proprietary, and potentially privileged Takeda business information without any specific articulation by Defense Counsel as to why that information would be potentially relevant to this case. Permitting Defense Counsel to go on a fishing expedition through Takeda's confidential information in the hope of finding relevant information would be inconsistent with the purpose of Rule 17 and would disincentivize victims of white collar crimes, like Takeda, from reporting such crimes in the future.

**LEGAL STANDARD**

The defense "may use subpoenas before trial to secure admissible evidence but not as a general discovery device." *United States v. Henry*, 482 F.3d 27, 30 (1st Cir. 2007) (*citing* Fed. R. Crim. P. 17; *Nixon v. United States*, 418 U.S. 683 (1974)). Under Rule 17(c)(2), a court may quash a third-party subpoena "if compliance would be unreasonable or oppressive." Fed. R. Crim. Pro. 17(c)(2). A subpoena "is not 'unreasonable or oppressive' if the proponent establishes relevancy, admissibility, and specificity." *Stern v. United States Dist. Ct. for the Dist. Of Mass.*, 214 F.3d 4, 17 (1st Cir. 2000) (*citing Nixon*, 418 U.S. 683). However, the defense may not use Rule 17 subpoenas as a "general discovery device" to undertake a fishing expedition through third-party documents. *Henry*, 482 F.3d at 30. Courts may quash subpoenas or any portion thereof where, as

here, a proponent fails to establish relevancy, admissibility and specificity. *See United States v. Ventola*, No. 15-10356-DPW, 2017 U.S. Dist. LEXIS 78113, at *3-4 (D. Mass. May 23, 2017) (Memorandum and Order by U.S.M.J. Bowler, quashing subpoena seeking all documents for 17 entities over a six-year time period because the requests "fail the specificity hurdle, invariably include matters that are not admissible, and amount to a general discovery device") (internal quotations omitted).

## ARGUMENT

Takeda respectfully requests that the Court quash the portions of the Subpoena that call for production of the full images of Ms. Bhambi's phone and Takeda-issued laptop because (1) Takeda has already produced all of the potentially relevant responsive material contained on those devices; and (2) production of the complete forensic images of Bhambi's phone and Takeda-issued laptop would be unreasonable and oppressive. Specifically, requiring production of the full images of Ms. Bhambi's phone and Takeda-issued laptop would require Takeda (the victim in this case) to either (a) expend significant time, effort, and expense to review all data on both devices or (b) produce, without review, documents containing highly confidential, proprietary and/or potentially privileged Takeda business information, without any showing of relevancy, admissibility, or specificity.

   1. **Takeda has already produced the relevant contents of Priya Bhambi's phone, a list of all files thereon, and documents created by EY in connection with the imaging of Ms. Bhambi's phone.**

To the extent that the subpoena calls for "[t]he entire Cellebrite phone extraction report(s)," a list of "all file names" on Ms. Bhambi's phone, and "all documents created by Jeremy Horowitz" of EY in connection with the imaging of the phone, Takeda has already produced all responsive

3

documents that are potentially relevant. Indeed, to date, Takeda has produced 31,527 pages of documents relevant to this case.

Specifically, on December 19, 2022, Takeda produced the chain of custody record created by Mr. Horowitz on November 8, 2022, as well as key documents related to Evoluzione Consulting that were identified by Takeda in the course of its investigation.[1] On January 9, 2023, Takeda produced the invoices submitted to Takeda by Evoluzione Consulting and Takeda's proof of payment of those invoices, and then subsequently made several productions relating to Ms. Bhambi's salary information. On March 17, 2023, Takeda produced all text messages between Ms. Bhambi and Mr. Montronde that were collected from Ms. Bhambi's phone; and on April 5, 2023, produced all communications between Takeda email addresses and email addresses with the domain @evoluzione-llc.com. Takeda then supplemented that production on September 30, 2024, after locating additional communications that Ms. Bhambi and Mr. Montronde had with Takeda employees regarding Evoluzione Consulting.

In addition, on October 16, 2025, Takeda produced two Excel spreadsheets containing the Axiom WhatsApp extraction report and the Cellebrite extraction report from Ms. Bhambi's phone prepared by EY at the time of imaging. The Cellebrite extraction report produced by Takeda contains (1) the call log from Ms. Bhambi's phone (including all phone numbers, dates, times, and status of incoming and outgoing calls); (2) Ms. Bhambi's contact list; (3) fully searchable text of all text messages to any party that were housed on Ms. Bhambi's phone; (4) searched items; (5) web history; and (6) a "timeline" tab that ordered the text messages chronologically. On November

---

[1] To the extent the Subpoena calls for Takeda to produce "[a]ny EY searches of [Ms. Bhambi's] phone, Takeda responds that EY did not perform any searches of Ms. Bhambi's phone. EY merely imaged the phone and transferred the contents to Takeda.

6, 2024, in response to Defense Counsel's subpoena, Takeda then also produced threaded, searchable PDF images of all text messages on Ms. Bhambi's phone, viewable as they would have appeared if viewed on Ms. Bhambi's phone directly. That production was made in the same format as all of Takeda's other productions in this case and consistent with Takeda's process for producing documents in litigation with Bates labels and confidentiality endorsements.

Because Takeda has already produced all potentially relevant information from the Cellebrite extraction of Ms. Bhambi's phone, Takeda respectfully requests that the Court quash the portion of the subpoena that seeks the entire Cellebrite extraction from the phone. This extraction could include highly confidential and proprietary Takeda business information, as well as potentially privileged communications, in Ms. Bhambi's e-mail and saved Takeda documents. It could also include Ms. Bhambi's personal and private information (such as location information, additional search history, application data, or protected health or financial information that was not relevant to Takeda's investigation or this case and, therefore, not reviewed by Takeda).

Were the Court to deny Takeda's motion to quash the portion of the subpoena directed to the phone extraction, Takeda would have to conduct a file-by-file review of the phone's contents to identify and withhold any non-relevant, highly confidential and/or privileged documents. This effort would take significant time and effort and result in additional expenditure to Takeda (as well as undoubtedly delay this trial). Alternatively, if the Court were to order production of the entire phone extraction on an expedited basis, without review by Takeda, Takeda would be compelled to produce a potentially significant number of confidential and potentially privileged documents without any ability to identify, Bates label, mark confidential, or track the production of such documents. Both options are "unreasonable and oppressive" (Fed. R. Crim. P. 17(c)(2)),

particularly when balanced against defense counsel's complete failure to establish relevancy, admissibility, and specificity of these additional materials.

For the reasons stated above, the Subpoena's request for the full Cellebrite image of Ms. Bhambi's phone is unreasonable and oppressive when balanced against defense counsel's failure to identify any specific information that he believes is missing from Takeda's prior productions. *See* Fed. R. Crim. P. 17(c)(2). The Court should therefore quash the portion of the Subpoena calling for the full Cellebrite extraction.  *See Stern*, 214 F.3d at 17; *Ventola,*  2017 U.S. Dist. LEXIS 78113, at *3-4.

### 2. Takeda has already produced the relevant contents of Ms. Bhambi's Takeda-issued laptop and a list of all files thereon.

All of Ms. Bhambi's Takeda emails and documents are stored on Takeda's network in the ordinary course and were collected by Takeda in the course of its investigation. As stated above, Takeda has already produced the documents related to Evoluzione Consulting that were identified by Takeda in the course of its investigation, invoices submitted to Takeda by Evoluzione Consulting and Takeda's proof of payment of those invoices, Ms. Bhambi's salary information, all text messages between Ms. Bhambi and Mr. Montronde that were collected from Ms. Bhambi's phone, and all communications between Takeda email addresses and email addresses with the domain @evoluzione-llc.com. Takeda's prior productions (totaling more than 30,000 pages) contain all information relating to Evoluzione Consulting, Mr. Montronde, Optimum Strategy Consulting, and Krystle Clarke that are in Takeda's possession, custody and control identified by Takeda's reasonable search and investigation. Because Takeda has already produced all potentially

12419979v4

relevant emails, text messages, and documents located on Takeda's network, any relevant documents on Ms. Bhambi's laptop would be merely duplicative.[2]

### 3. Requiring Takeda to produce the entire image of Ms. Bhambi's Takeda-issued laptop would be unreasonable and oppressive.

Requiring Takeda to now produce the full image of Ms. Bhambi's laptop (and all documents located thereon) would necessarily require Takeda to also produce highly confidential and proprietary Takeda business information, as well as potentially privileged communications, that Takeda has already determined are not relevant to the fraud committed. Indeed, on November 12, 2024, Takeda produced to Defense Counsel a fully searchable list of the user-generated files from the profile directory of Ms. Bhambi's Takeda-issued laptop. Takeda has therefore already complied with the portion of the subpoena calling for "all file names" on that laptop. As evidenced by that list, while there are more than 39,000 files on the laptop, only a small number (less than 20) hit on the search terms "Samuel," "Montronde," "Krystle," "Optimum," "OSC," and/or "Evoluzione." All of the files that hit on those search terms were already produced in Takeda's prior productions.[3]

What has not been produced by Takeda are highly confidential and proprietary Takeda documents not relevant to Mr. Montronde or his involvement with Evoluzione Consulting. As demonstrated by the list of file names produced by Takeda, those documents include, among other

---

[2] At the request of Defense Counsel, Takeda has now also searched for the document provided by Defense Counsel which Defense Counsel contends evidences Mr. Montronde's work for Takeda. Takeda did not locate that document and/or any similar documents on its system and the title of that document does not appear within the list of files that are contained on Ms. Bhambi's Takeda-issued laptop.

[3] To the extent the Subpoena calls for all searches of the laptop computer" and "[a]ll documents regarding any search of the laptop," Takeda states that its specific searches are privileged and confidential attorney work product. Takeda further states that no searches of the laptop were conducted by EY beyond the list of file names already produced to Defense Counsel.

things, Takeda's most sensitive internal financial planning documents and confidential presentations to Takeda's most senior leadership. As noted above in the context of the phone extraction, were the Court to deny Takeda's motion to quash the portion of the subpoena directed to the laptop image, Takeda would therefore have to conduct a file-by-file review of the laptop's contents to identify and withhold any non-relevant, highly confidential and/or privileged documents, an effort that would involve significant expense for Takeda and undoubtedly delay this trial.  Alternatively, if the Court were to order production of the entire laptop image on an expedited basis, without review by Takeda, Takeda would be compelled to produce tens of thousands of confidential and potentially privileged documents without any ability to identify, Bates label, mark confidential, or track the production of such documents. Both options are "unreasonable and oppressive" (Fed. R. Crim. P. 17(c)(2)), particularly when balanced against defense counsel's complete failure to establish relevancy, admissibility, and specificity of these additional materials. Moreover, an order to compel victim companies, like Takeda, to produce non-relevant, highly confidential, proprietary, and/or privileged documents (without review or conformity with their internal document production processes), in this type of white-collar criminal case would serve as a significant disincentive to those companies evaluating whether to report such crimes in the future.

For this reason, the Court should also quash the portion of the Subpoena that calls for "[t]he entire image/extraction of Priya Bhambi's laptop (owned by Takeda)."  *See* Fed. R. Crim. P. 17(c)(2).

**Conclusion**

For the above reasons, the Court should quash the portions of the Subpoena that require production of the entire extraction of Ms. Bhambi's mobile phone and the image of her Takeda laptop computer.

Respectfully submitted,

*/s/ Adam Bookbinder*
Adam J. Bookbinder (BBO# 566590)
Choate Hall & Stewart
2 International Place
Boston, Massachusetts 02110

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I served this pleading upon the attorneys of record for all parties by e-mail because Takeda is not a party in this case.

Dated: November 14, 2024          */s/ Adam Bookbinder*

12419979v4